```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**NATIONWIDE AGRIBUSINESS
INSURANCE COMPANY,**

        **Plaintiff,**

**v.**                      **//**    **CIVIL ACTION NO. 1:08CV184**
                                           **(Judge Keeley)**

**JAMES LOUIS DEGASPERIN,**

        **Defendant,**

**v.**

**PAMELA CASTEEL, Administratrix
of the Estates of Lori Casteel,
Collin Casteel, and Angelina
Casteel.**
        **Intervenor.**

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO LIFT STAY (DKT. 38), GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT (DKT. 21), AND DENYING INTERVENOR'S CROSS
MOTION FOR SUMMARY  JUDGMENT (DKT. 22)**

### I. PROCEDURAL HISTORY

The question presented in this case is whether a liability insurance policy issued by the plaintiff, Nationwide Agribusiness Insurance Company ("Nationwide"), provides coverage for the deaths of Lori Casteel, Collin Casteel, and Angelina Casteel, whom James Louis Degasperin ("Degasperin"), Nationwide's policyholder, killed on April 15, 2007. The Court originally granted Nationwide's motion

for summary judgment during a hearing on January 5, 2010, holding that the policy at issue excluded coverage for the intentional killings. By an order dated January 12, 2010, however, the Court stayed its ruling in order to allow Degasperin to pursue <u>habeas corpus</u> relief in the West Virginia state court system.

Nationwide sought to lift the stay at a hearing on April 20, 2011. Neither Degasperin, by his appointed counsel, nor the intervenor, Pamela Casteel, on behalf of the estates of the deceased Casteels ("intervenor" or "Casteels") raised sufficient legal arguments establishing that a further stay in this case was warranted. Noting that little progress had been made in Degasperin's collateral proceedings, the Court **GRANTED** Nationwide's motion to lift the stay.

## II. FACTUAL BACKGROUND

This case followed the brutal killings of Lori, Collin and Angelina Casteel[1] in Preston County, West Virginia, on April 15, 2007. Degasperin was convicted on three counts of second-degree murder by a Preston County jury. Although his appeals of these convictions were unsuccessful, as already noted, he is currently

---

[1] Lori Casteel's unborn child, given the name Angelina, was considered a murder victim under the West Virginia Unborn Victims of Violence Act, W. Va. Code § 61-2-30.

attempting to pursue collateral relief through a <u>habeas</u> proceeding in state court.

Prior to Degasperin's convictions, the intervenor, as administratrix of all three estates, filed a wrongful death action against him in the Circuit Court of Preston County. Degasperin made a demand for defense and indemnity on Nationwide based on a farm liability policy in effect at the time of the murders.

Following that demand, Nationwide filed this action, seeking a declaration that the killing of the Casteels was not an "occurrence" under the policy, and specifically was not covered by virtue of the standard intentional acts exclusion contained in the policy. The Court granted the intervenor's request to join in this action, and also appointed a guardian <u>ad</u> <u>litem</u> to represent the interests of Degasperin. The Preston County wrongful death suit has not progressed significantly pending the outcome of this action.

### III. ANALYSIS

### A. Intentional Acts Exclusion

The parties do not dispute that the farm liability policy issued to Degasperin by Nationwide does not cover intentional acts of an insured.[2] Although the burden rests with the insurer to prove

---

[2]"This insurance does not apply to . . . 'Bodily injury' . . . which is expected or intended by the insured." (Dkt. 21-1, 4.)

that a policy exclusion applies, Syl. Pt. 7, Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc., 356 S.E.2d 488 (W. Va. 1987), Nationwide need only show a low threshold of mental competency on the part of Degasperin at the time of the murders. "Coverage under an intentional injury exclusion clause in a homeowners' insurance policy may be denied when one who commits a criminal act has a minimal awareness of the nature of his act." Syl., Municipal Mut. Ins. Co. of W. Va. v. Mangus, 443 S.E.2d 455 (W. Va. 1994); but see id. at 459 (Miller, J., dissenting)("By far the overwhelming majority of courts that have considered the question of whether an exclusion in a liability policy for acts 'expected or intended by the insured' hold that it does not apply if the insured lacks the mental capacity to intentionally commit the act.").

Nationwide argues that, by virtue of his murder convictions, Degasperin is collaterally estopped from disputing that his actions in killing the Casteels constitute intentional acts. The intervenor responds that the criminal convictions do not bar her from litigating the issue of intent in this case, and also that, as she was not a party to the previous criminal case, the doctrine of collateral estoppel cannot be applied against her.

### B. Collateral Estoppel

Both Nationwide and the intervenor agree that <u>Baber v. Fortner</u>, 412 S.E.2d 814 (W. Va. 1991), controls the outcome here. In <u>Baber</u>, the defendant was convicted of shooting and killing the plaintiff's decedent. The victim's estate then sued him for wrongful death, and the defendant attempted to defend the suit on the basis that he had acted in self-defense. The defendant's automobile liability carrier intervened in the suit, seeking a ruling that the killings did not arise out of the defendant's "operation, maintenance and use" of his pickup truck merely because the assailant had been sitting in the vehicle while firing at the victim, and that, in any event, the defendant was barred from relitigating the issue of intent by virtue of his conviction.

The West Virginia Supreme Court of Appeals agreed with the insurance company, concluding that the liability policy did not cover the intentional acts underlying the suit. The court stated that "the adjudication of a killing which results in a voluntary manslaughter conviction conclusively establishes the intentional nature of that act for the purposes of <u>any subsequent civil proceeding</u>," and thus the defendant was estopped from arguing that

his actions were anything but intentional. Id. at 822 (emphasis added).[3]

Baber plainly controls the result here. Although the factual and procedural histories of the cases differ somewhat, they do not compel a different conclusion. First, while Baber did not address the matter at length, the result there clearly affected the rights of the victim's estate, just as the ruling in this case affects the rights of the intervenor. By holding that there was no coverage for the slaying, Baber precluded the victim's estate from satisfying any potential judgment with the insurance company's funds. That the ruling occurred in the context of a wrongful death suit, and not a declaratory judgment action as is the case here, is irrelevant to the analysis. In either context, the right of a victim in West Virginia to recover from the insurance company depends entirely on the contractual rights of the insured. See Conley v. Spillers, 301 S.E.2d 216 (1983)(collateral estoppel does not require mutuality of

---

[3] Though Degasperin was convicted of second degree murder and not voluntary manslaughter, the distinction is without effect here, as both crimes require the prosecution to prove, beyond a reasonable doubt, that the killer acted intentionally. State v. Guthrie, 461 S.E.2d 163 (W. Va. 1995).

parties and may be asserted against a person in privity to a party of the prior action).[4]

The intervenor here attempts to distinguish <u>Baber</u> by pointing out that, unlike the defendant in <u>Baber</u>, Degasperin did not raise an insanity or diminished capacity defense at his criminal trial. In further support of her argument, she cites <u>Clemmer v. Hartford Ins. Co.</u>, 587 P.2d 1098 (Cal. 1979), a case in which the Supreme Court of California held that a victim's estate was not collaterally estopped from arguing that the killing was unintentional due to mental incapacity, even though the killer had been convicted of second-degree murder.

While in <u>Clemmer</u> the victim was permitted to "relitigate" the issue of intent, having not had the opportunity to do so in the criminal proceeding, in West Virginia "because the defendant had the opportunity to fully litigate the issue in the criminal

---

[4] Predating and presaging <u>Baber</u> is <u>Erie Ins. Co. v. Belcher</u>, 718 F.Supp. 475 (S.D.W. Va. 1989). There, Judge Hallanan ruled that an insured's second-degree murder conviction prevented him from relitigating the issue of intent in the context of a declaratory judgment action brought by his insurer against both the slayer and the estate of his victim. Although <u>Belcher</u> discussed collateral estoppel as it related to the killer, the fact that it did not separately address the issue of whether the doctrine should be applied to the detriment of the victim's estate suggests that no due process problem occurs in such an instance.

proceeding," he was estopped from arguing the point again. Baber, 412 S.E.2d at 822.[5] Here, Degasperin clearly had the opportunity to defend against a finding that he had intentionally killed Lori, Collin, and Angelina Casteel. The jury, however, rejected his arguments, finding beyond a reasonable doubt that he committed second-degree murder, a finding requiring a determination of intent.

Not only is Degasperin bound by this finding, but under Conley v. Spillers, 301 S.E.2d at 220-21, the intervenor is as well. While not a party to the criminal proceedings, she nevertheless is bound by the doctrine of collateral estoppel because her rights are coterminous with those of Degasperin, the policyholder. She may perhaps religitate the issue of intent in her state court wrongful death action, where she is situated directly adverse to Degasperin, but not here, where she is asserting a derivative interest based on his insurance contract. See Belcher, 718 F.Supp. at 478. In this declaratory judgment action, the intervenor has no independent claim against Nationwide; she merely supports Degasperin's plea for

---

[5] "'A fundamental due process point relating to the utilization of collateral estoppel is that any person against whom collateral estoppel is asserted must have had a prior opportunity to have litigated his claim.'" Baber, 412 S.E.2d. at 821-22 (quoting Syl. Pt. 8, Conley, 301 S.E.2d 216 (1983)).

defense and indemnity in the hope that such funds might be available to satisfy any judgment in her favor entered by the state court.

## IV. Conclusion

Although Degasperin's suit for collateral relief still proceeds in the Circuit Court of Preston County, his conviction is long since final and compels the result the Court reaches today. Accordingly, the Court **GRANTS** Nationwide's motion to lift the stay (dkt. 38). Furthermore, because Nationwide has established that no genuine dispute of material fact exists as to whether Degasperin's acts are covered under his liability policy, the Court **GRANTS** Nationwide's Motion for Summary Judgment (dkt. no. 21), and **DENIES** the intervenor's Cross Motion for Summary Judgment (dkt. no. 22).

It is so **ORDERED**.

Pursuant to Fed.R.Civ.P. 58, the Court directs the Clerk of Court to enter a separate judgment order and to transmit copies of both orders to counsel of record.

DATED: July 12, 2011.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE